**In the Matter of MBA LIMITED PARTNERSHIP, Debtor.**

**Bankruptcy No. BK89–81160.**

United States Bankruptcy Court, D. Nebraska.

Oct. 23, 1989.

Dean Jungers, Bellevue, NE, for creditor College Associates, Inc.

Thomas Whitmore and Tom Hemphill of Harris, Feldman Law Offices, Omaha, NE, for debtor.

MEMORANDUM

TIMOTHY J. MAHONEY, Chief Judge.

Final hearing on motion for relief by creditor College Associates, Inc., Filing No. 5, was held on October 5, 1989. Dean Jungers of Bellevue, Nebraska, appeared on behalf of the creditor. Thomas Whitmore and Tom Hemphill of Harris, Feldman Law Offices, Omaha, Nebraska, appeared on behalf of the debtor.

The debtor owns a Bellevue, Nebraska, apartment complex, purchased from the moving creditor in early 1987. The moving creditor financed the purchaser by taking back a purchase money deed of trust and assignment of rents. The creditor characterizes the financing arrangement as a "wrap-around" mortgage, by which this Court understands that the seller had an outstanding financial obligation to a lender, American Charter Federal Savings and Loan. When the seller conveyed title to this debtor, the American Charter obligation was not paid off, but the new debt running from the purchaser to the seller reflected the seller's obligation to American Charter and the balance owing to the seller was at least the amount of the American Charter mortgage.

As a result of this financing arrangement, if the debtor fails to make the required monthly payments to this creditor, this creditor may have difficulty in making the "pass through" payments to American Charter on the underlying obligation. As might be suspected, that is exactly the situation in this case. The debtor failed to make the monthly debt payments for several months in the spring and summer of 1989. The moving creditor exercised its rights under the assignment of rents and directed that rents be paid directly to it. The moving creditor also proceeded to enforce its rights under the deed of trust power of sale. The property was listed for sale with appropriate notices given and on the Friday preceding the Monday sale date, this debtor filed this Chapter 11 bankruptcy proceeding. The petition was filed on August 18, 1989. This creditor filed its

motion for relief on August 30, 1989, alleging that the debtor had no equity in the property and that relief should be granted for cause pursuant to Section 362(d)(1).

At the trial, the creditor presented the testimony of a licensed appraiser who also happens to be the chief appraiser for Sarpy County, Nebraska, the political subdivision in which the City of Bellevue and this apartment complex are located. He testified that the property is listed at an assessed value for 1989 in the amount of $1,025,376.00. Under Nebraska state law, the assessed value is the equivalent of market value. The property was valued for assessment and tax purposes in the year 1988 at $1,330,848.00. The assessed value was reduced as a result of a request by the debtor and evidence presented by the debtor concerning the actual income and expense incurred by the debtor.

The appraiser testified that the value of apartment complexes such as this should be determined by capitalizing the income stream because there are no sales of comparable properties in the area. Based on the information the debtor provided to the county, the value was placed at $1,025,376.00 assuming a 25 percent vacancy rate and significantly different expenses that were used in the calculation for 1988.

The appraiser explained the appraisal process and the calculations involved and admitted that the property would be worth more if the vacancy rate were lower than 25 percent or the gross rentals were higher than the figures in the calculations which resulted in the tax value. The appraiser also testified that the debtor as recently as early 1989 requested a further reduction in value for tax purposes. Evidence was presented to the county by the debtor concerning the cash flow and expenses but the request by the debtor for lowering the assessed value was denied.

The creditor also presented testimony from an individual who was one of the principals of the creditor during the time the property was owned by the creditor. That principal, Mr. Church, is a licensed real estate broker and has been involved in several developments such as the one in question. He reviewed the income projections submitted by the debtor and reviewed the actual results of operations submitted by the debtor. He gave an opinion that the debtor could not realistically reach the income projections because they assumed a 6 percent vacancy rate versus the actual present 15 percent rate. In addition, they assumed more revenue had been received in September and October than was possible to be received based upon the actual rent roll. Further, the projections did not acknowledge over $11,000.00 of uncollectible accounts and bad checks as of the trial date. He, therefore, determined an effective projected income on an annual basis of $286,422.00.

On cross examination, he was asked to make a valuation calculation using the formula his appraiser had used. That formula would result in a valuation of $1,374,825.00. To reach such effective projected income and, therefore, to reach such valuation, the debtor would be required to immediately spend between $25,000.00 and $35,000.00 to upgrade various apartments which were not in rentable condition.

For its opinion of value, the debtor presented an appraisal that was prepared in conjunction with the purchase in late 1986. That appraisal established the market value of the property at $1,550,000.00. In support of that appraisal, the debtor presented testimony from a real estate broker/apartment management company representative. Although he would not testify that the value of the property at this point in time was $1,550,000.00, he supported the value in general statements. However, he gave no basis for such valuation except that he believed he could make the projections presented by the debtor work.

This Court gives that testimony very little weight. The witness is basically interested in obtaining a management contract from the debtor. He acknowledged that interest under oath and the Court, although believing that the testimony is provided in good faith, also believes it is based upon a hope and not any realistic

evaluation of the current prospects for the apartment complex.

As was mentioned above, the debtor submitted projections of income and expenses for the next year. The projections are totally unrealistic based upon past history and the current situation of the debtor. There is no money for repairs. Two months have passed during which the debtor has not met the projections of income. The debtor has a program of renting to students for a special price. However, many of those students, although participating in the program, have not actually paid either the required deposit or the monthly rent. This has resulted in somewhere between $7,000.00 and $11,000.00 in non-revenue producing apartments which are being used and are unavailable to potential paying tenants.

■ The debtor argues that it should be permitted to use the rent monies collected prepetition by the creditor pursuant to the assignment of rents. Those monies amount to approximately $30,000.00 and if spent on improvements immediately, would put the apartment complex in a position to move forward with the rental program which would enable it to meet its projections. However, the debtor has no right to use the $30,000.00 without somehow protecting the interest of the creditor.

The deed of trust executed by this debtor on the date of purchase included the grant of a lien to the creditor on all aspects of the real property, including the rents. In addition to the deed of trust, the debtor executed a separate document entitled "Assignment of Rents." By such document, which was duly recorded along with the deed of trust, the debtor granted the creditor a lien upon the rents in addition to the "lien" which was included in the deed of trust. The lien was effective from the date of execution of the assignment but, by its terms, could not be enforced unless there was a default under the terms of the note and deed of trust. A default occurred in the summer of 1989 and the creditor took the required steps to enforce the lien which it had been granted in the assignment.

The bankruptcy petition did not cut off the lien of the creditor in the rents which had been assigned. Although rents received post petition would normally be considered "after-acquired property," Section 552(b) of the Bankruptcy Code provides that a security interest which extends to rents continues to do so even after the bankruptcy petition is filed. In this case, the creditor did everything required by its contractual assignment to enforce its right to monthly accruing rents. Those actions were taken prior to the bankruptcy petition being filed and, therefore, the lien on the rents which was acquired upon the execution of the deed of trust and assignment was enforceable prior to the date of the petition and such enforceability continues pursuant to Section 552(b) after the bankruptcy petition is filed.

Since the creditor has a specific and enforceable right to the rents post petition, those rents are defined by the Bankruptcy Code as "cash collateral" under Section 363(a). The debtor may not use such cash collateral without permission of the Court or permission of the creditor that has an interest in the collateral. Section 363(c)(2). Prior to such use, the debtor must provide adequate protection of such interest pursuant to Section 363(e).

If there was a significant equity cushion in the real property which would be available to the creditor for protection of its interest both in the real property itself and in the rents, the Court might be inclined to permit the debtor to use the rents to improve the property which presumably would be in the best interest of all the parties and be consistent with an adequate protection requirement for the creditor. However, this Court is not convinced that there is an equity cushion of any sort. The evidence of the value of the property presented by the debtor is unconvincing. An appraisal which is now three years old and which apparently was prepared under different market conditions in the Bellevue area than exist at this time is not convincing evidence of current value. The debtor was unable to present accurate current rental or expense figures for the month of

September, 1989. The debtor's projections for September, 1989, through August, 1990, were inaccurate on their face, because they included rentals of apartments that were not rentable, either because of condition or because they are used in the administration of the project. The projections do not include any cure of the underlying American Charter mortgage default, nor do they indicate an operating surplus at the end of the year which would come even close to servicing the principal obligation, assuming interest was kept current.

This Court concludes from the evidence that the value of the property is $1,025,000.00. In addition, there is approximately $30,000.00 in rental receipts being held by the creditor. However, the unpaid obligation secured by the deed of trust is $1,159,618.32 as of September 20 with interest accruing, if it is allowable under the Bankruptcy Code, at the rate of $309.00 per day. The debtor has no equity in the property. The debtor has not provided any offer of adequate protection which would provide assurance to the creditor that the gross rents could be used for the operation of the business and still leave funds available to service the obligation secured by the deed of trust. Even if the $30,000.00 of rents being held by the creditor was applied to improvements on the apartment complex, the debtor's projections could not be met because such improvements cannot be made immediately and the non-rentable apartments cannot be rented immediately. In addition, the debtor presented no evidence of the collectibility of the approximately $11,000.00 of back rent owed by current tenants.

The Court concludes that the creditor has presented sufficient evidence of cause for relief from the automatic stay pursuant to Section 362(d)(1). Relief is granted.

Separate journal entry shall be filed.